A96A0724. DAVIS v. THE STATE.
(471 SE2d 307)

BEASLEY, Chief Judge.

After a jury trial, Davis was convicted of aggravated assault, OCGA § 16-5-21 (a) (2), and giving a false statement to a police officer, OCGA § 16-10-20. He contends the court erred in denying his motion for new trial based upon newly discovered evidence. OCGA § 5-5-23.

At trial it was shown that Davis was driving a car with Chandler

seated in front as the only passenger. On a multi-lane road, Davis moved from the left lane to the far right. Shortly thereafter Chandler threw a 20-ounce plastic bottle partly filled with liquid at a pedestrian, striking him in the face and causing serious injury to his eye. The victim heard someone utter an obscenity just before the bottle struck. Witnesses in the car immediately behind Davis and Chandler saw them make gestures of congratulations to each other. When the cars stopped for a traffic light, one of the witnesses, Vanover, leaned out of the car and informed Davis and Chandler that they had been seen and that the police would be informed.

Davis, then Chandler, got out of the car and walked back to the witnesses' car. Vanover told them he had noted the license plate number, and Davis responded that he did not care because it was not his car. Both Davis and Chandler then began jeering at Vanover, urging him to leave the car, and Chandler spat on the window. Davis and Chandler eventually returned to their car and drove off, and the witnesses turned their car around to drive back to the pedestrian. On the way, the witnesses noticed Davis and Chandler driving next to and behind them. The witnesses stopped at the location of the pedestrian and gave a report to police, but Davis and Chandler drove away.

Investigation of the license plate number revealed that it belonged to Davis's grandmother. Approximately eight weeks after the assault, a police officer spoke with Davis who said a man he knew only as Jack had asked for a ride, Davis had agreed, and Jack had thrown the bottle at the pedestrian. Davis stated he then ordered Jack out of the car, told him what he had done was wrong, and proceeded to his workplace. Further inquiry led the officer to identify Chandler as the man who may have been with Davis on the day of the crime. Chandler's first name is Kevin, which Davis knew. The officer again contacted Davis, who admitted his earlier statement was false and that Chandler was the man who threw the bottle. Davis did not tell the officer of his own actions after the attack.

Chandler, who had known Davis about seven years, was not apprehended at the time of trial and did not testify. When Chandler learned Davis had been arrested, he went to live with his grandparents. During that time, he knew there was a warrant for his arrest and told his parents not to inform anyone where he was living. He surrendered shortly after Davis's trial and pled guilty to aggravated assault. He denied there was any celebration after the attack and stated Davis did get out of the car but did not say anything to Vanover. He also stated he had not said anything before he threw the bottle and Davis had not done anything to entice him to throw it, and that if he had been subpoenaed or had known when Davis was to be tried, he would probably have testified in his behalf.

Davis contends the court should have granted his motion for new

trial on the basis of this evidence because he met the requirements set forth in *Timberlake v. State*, 246 Ga. 488, 490-491 (1) (271 SE2d 792) (1980). " 'It is incumbent on a party who asks for a new trial on the ground of newly discovered evidence to satisfy the court: (1) that the evidence has come to his knowledge since the trial; (2) that it was not owing to the want of due diligence that he did not acquire it sooner; (3) that it is so material that it would probably produce a different verdict; (4) that it is not cumulative only; (5) that the affidavit of the witness himself should be procured or its absence accounted for; and (6) that a new trial will not be granted if the only effect of the evidence will be to impeach the credit of a witness.' [Cits.] All six requirements must be complied with to secure a new trial. [Cits.]" Id.

Our review is circumscribed because " 'motions for new trial upon the ground of newly discovered evidence are addressed to the sound discretion of the trial judge, and a refusal to grant the motion will not be reversed unless (that) discretion is abused.' [Cit.]" *Brown v. State*, 209 Ga. App. 314, 316 (2) (433 SE2d 321) (1993).

We first note that the new evidence here is not so much newly discovered as newly available, an important distinction noted in *Hester v. State*, 219 Ga. App. 256 (1) (465 SE2d 288) (1995). There we determined that without some showing of special circumstances, it was not an abuse of discretion to deny a new trial based on newly available evidence. Id. at 257 (1). Davis seeks to distinguish *Hester*, reasoning that Chandler's testimony should be considered newly discovered because Chandler was unavailable in that he had not been apprehended at the time of trial, while Hester's co-defendant was unavailable because he invoked his right to remain silent. This is a distinction without a relevant difference. Both co-defendants were not available to testify at trial, both subsequently pled guilty, and both then gave exculpatory testimony at motions for new trial. The "two critical facts" present in *Hester*, supra at 257 (1), are here as well: 1) Chandler's testimony is not new evidence because his involvement in the incident was always known to Davis; and 2) Chandler " 'lacks credibility, since he has nothing to lose by testifying untruthfully regarding the alleged innocence of the defendant seeking a retrial.' [Cit.]" Id.

This lack of credibility hinges on the fact that he was unavailable through his own acts and has since pled guilty; the specific kind of action he took to make himself unavailable until shortly after Davis's trial is unimportant. Although Davis contends that, once arrested, Chandler cooperated and admitted he was the only person involved in the assault, the record indicates that Chandler gave the version of events now advanced as exculpatory of Davis only after pleading guilty and receiving a ten-year sentence. Under these circumstances, Chandler's belated attempt to exculpate Davis is inher-

ently suspect. See *United States v. Carlin*, 573 FSupp. 44 (N.D. Ga. 1983). Credibility will almost always be suspect when "newly available" evidence is the testimony of a fellow participant in the crime who attempts to testify helpfully to a colleague only *after* his own case has been adjudicated. It comes with little reliability to rescue it from its tainted circumstances. Davis suggests no special circumstances that would overcome the lack of credibility.

Further, if we consider Chandler's testimony to be newly *discovered* evidence and apply the *Timberlake* requirements, Davis still fails to show the court abused its discretion in denying the motion. As to the first requirement, Chandler's evidence has not come to Davis's knowledge only after the trial. To the contrary, Chandler testified to nothing about which Davis was not fully cognizant at trial, except his own state of mind.

Nor is there any evidence that Chandler's absence was "not owing to the want of [Davis's] diligence." *Timberlake*, supra. Chandler testified that he had told his parents not to reveal his whereabouts and that, to his knowledge, Davis did not know where he was. At trial, an officer testified that some unsuccessful efforts had been made by the sheriff's office and probation department to locate Chandler. Neither the official efforts nor Chandler's testimony requires a finding that any efforts that Davis might have undertaken to locate Chandler would have been futile; the court could have concluded that Chandler's friend of seven years might have had more success than the police had. There was simply no evidence that Davis made any such effort or attempted to subpoena Chandler or sought a continuance because of his unavailability. See *Dobbs v. State*, 245 Ga. 208, 210 (3) (b) (264 SE2d 18) (1980); *Clayton v. State*, 203 Ga. App. 843, 845-846 (4) (b) (418 SE2d 610) (1992); *Curtiss v. State*, 165 Ga. App. 464 (302 SE2d 1) (1983).

Moreover, the court also may have concluded that the credibility problems inherent in testimony such as Chandler's would have kept it from being so material that it would have resulted in a different verdict. See *Jewell v. State*, 261 Ga. 861, 862 (2) (413 SE2d 201) (1992). Although the court did not specify why it denied the motion, or which *Timberlake* requirement it found lacking, we cannot conclude the court abused its discretion in denying the motion.

*Judgment affirmed. Birdsong, P. J., and Blackburn, J., concur.*

DECIDED MAY 10, 1996.

*Stephen T. Maples*, for appellant.
*Daniel J. Porter, District Attorney, Rodney K. Miles, Assistant*

*District Attorney*, for appellee.